441 A.2d 1324

**PECOT, INC.**

v.

**Richard SIRIANNI, d/b/a Le Bistro Restaurant, Appellant.**

Superior Court of Pennsylvania.

Argued March 10, 1981.

Filed Feb. 26, 1982.

Petition for Allowance of Appeal Granted June 30, 1982.

---

Nicholas J. Scafidi, Philadelphia, for appellant.

Joan Saltzman, Philadelphia, for appellee.

Before HESTER, DISALLE and MONTGOMERY, JJ.

HESTER, Judge:

The appellant, Richard Sirianni, is the operator and sole stockholder of Le-Bistro Restaurant in Philadelphia. In 1978, he employed Hugh Zimmers, an architect, for the purpose of designing a glass enclosure for an outdoor patio on the restaurant's premises.

In the Spring of 1978, the appellant met with Putnum Stow, an employee of E.W. Bleecker & Associates. E. W.

Bleecker & Associates had its principal office in Bryn Mawr, Pennsylvania. Shortly after that meeting, a letter agreement was sent by E. W. Bleecker to appellant confirming the terms of their oral agreement for the construction and purchase of a skylight roof system. E. W. Bleecker & Associates were manufacturer's representatives for the appellee, Pecot, Inc.

At the time the appellant signed the letter agreement, he was aware that the appellee was an Oklahoma-based corporation which would manufacture the custom-made skylight roof system.

In June of 1978, the appellant met again with either Bleecker or Stow for the purpose of changing the roof system from tinted to clear glass. A letter dated June 20, 1978 was mailed by the appellee in Oklahoma to the appellant in Pennsylvania confirming the modification. Thereafter, modified shop drawings prepared by the appellee were approved and returned by the appellant's architect on or about July 1, 1978.

The appellant paid only a portion of the purchase price and sued the appellee, Bleecker and Zimmer during the March Term, 1979 in Pennsylvania for the alleged defective design and construction of the roof system. In June, 1979, the appellee filed suit in Oklahoma for the unpaid purchase price, acquired a default judgment for $16,215.50 and subsequently transferred the judgment to Pennsylvania.

On December 21, 1979, the appellant filed a Petition to Strike and/or Open Judgment in the Court of Common Pleas of Philadelphia County on the grounds that the Oklahoma judgment was not entitled to full faith and credit in Pennsylvania due to the fact that the Oklahoma court did not have personal jurisdiction over the appellant. The appellant's petition was denied on September 17, 1980 and the appellant filed the within appeal. The appellee presumably argues that the appellant is subjected to the in personam jurisdiction of the Oklahoma courts under the purview of that state's long-arm statutes. 12 O.S.1971, § 187 and 12 O.S.1971 § 1701.03.

A non-resident defendant must conduct some activity that amounts to minimum contact with the forum state and thereby permits that state's courts to exercise personal jurisdiction without being in violation of the due process clause of the Fourteenth Amendment. *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Insurance Company*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). We must, therefore, decide whether the appellant's behavior with respect to the transaction entered into with the appellee amounts to minimum contacts with the State of Oklahoma. The search for minimum contacts necessarily entails a perusal of the facts of each case and a comparison with prior decisions rendered on similar facts. *Vacu-Maid, Inc. v. Covington*, 530 P.2d 137 (Okl.App. Div. 2, 1974).

In *Vacu-Maid, Inc.*, supra, the plaintiff was an Oklahoma-based manufacturer which instructed its agent to travel to North Carolina and to persuade the defendant to sell the plaintiff's built-in cleaning systems. The defendant travelled to Oklahoma to view the plaintiff's plant in order to make a more intelligent decision on whether to sell the systems. The defendant decided to sell. He would telephone orders to the plaintiff in Oklahoma; the plaintiff, in turn, would ship the systems FOB. This method of conducting business was carried on for several years until the plaintiff sued the defendant in 1972 in the Oklahoma courts for the balance due on an open account. The defendant was served in South Carolina. The Oklahoma trial court dismissed the lawsuit for lack of in personam jurisdiction.

In refusing to reverse on appeal, the *Vacu-Maid* court was particularly influenced by the traditional portrait painted there of the aggressive seller and passive buyer. The plaintiff's agent solicited the defendant's expertise in North Carolina; the agent visited North Carolina annually; and, shipments originated in Oklahoma and traversed to North Carolina. Conversely, the defendant was not the initiator. He merely responded to the efforts initiated by the plaintiff. The *Vacu-Maid* court did not find the defendant's repeated

phone calls and single visit to Oklahoma to be evidence of aggressive behavior that would satisfy minimum contact standards.

The behavior of the appellant here is even less aggressive than that taken by the defendant-buyer in *Vacu-Maid, Inc.* supra. The appellant did not visit Oklahoma for any reason; nor did he make any phone calls prior to delivery of the skylight system. We would be hard-pressed, then, to rule that our appellant-buyer performed minimum contacts with Oklahoma when the actions of a more aggressive buyer were not sufficient to meet minimum contact standards in *Vacu-Maid, Inc.* We do not agree, then, with the lower court's conclusion that the appellant was an active purchaser.

A review of the remaining cases supports our ruling. In *CMI Corporation v. Costello Construction Company,* 454 F.Supp. 497 (D.C.Okl.1977), the non-resident defendant was not subjected to the jurisdiction of the Oklahoma court despite the fact that he had visited Oklahoma on one occasion to inspect rental equipment and on another occasion to discuss the dispute that had arisen between the parties. Once again, we find the contacts of the appellant with the forum state to be less intrusive than those of the defendant in *CMI,* supra.

The lower court felt bound by the Court's holding in *Yankee Metal Products Company v. District Court of Oklahoma,* 528 P.2d 311 (Okl.1974). We recognize that the non-resident defendant's actions in *Yankee Metal,* supra, were similar to those taken by the appellant in that neither visited the forum state and both ordered a custom made product and participated in its design. Nevertheless, there was one distinctive set of actions taken by the defendant in *Yankee Metal,* supra, that we do not find in the dispute before us. The Yankee Metal defendant made direct contacts to the plaintiff-seller in the forum state via the telephone. The appellant and his architect agent contacted a sales representative in Pennsylvania. The discussions that formed and altered the contract occurred in Pennsylvania. The appellant did not make a direct call to the appellee in

Oklahoma until after delivery of the skylight roof system. We find this to be a significant enough distinction to skirt the parameter set by *Yankee Metal,* supra.

Long-arm statutes were designed to provide an effective and convenient means of redress for resident plaintiffs who happen to experience the adverse effects of a non-resident defendants' interstate activities; they were designed to warn non-resident defendants that they could not escape the consequences of litigation in a jurisdiction where they voluntarily chose to act. In short, they were designed to allay hardship and promote fairness.

The appellant has convinced us that his performance prior to and during the agreement with the appellee did not reach the minimum contact level. Long-arm statutes were not designed to accommodate resident plaintiffs at the expense of a non-resident defendant whose activities delicately and indirectly reach the forum state's borders.

We reverse.

DiSALLE, J., did not participate in the consideration or review of this case.