542 A.2d 557

**Frances G. HOLDEN, Appellee,**

**v.**

**Diane HOLDEN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 18, 1987.

Filed May 10, 1988.

James F. Geddes, Jr., Wilkes–Barre, for appellant.

Steven A. Bergstein, Allentown, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, McEWEN, OLSZEWSKI, MONTEMURO, POPOVICH and JOHNSON, JJ.

CAVANAUGH, Judge:

The issue in this case is whether a court in Pennsylvania may exercise *in personam* jurisdiction over the appellant, Diane Holden, in a civil action where all of the conduct by the appellant took place in Texas. If such jurisdiction does not exist, the court below erred in refusing to open a

default judgment entered against the appellant and the complaint against her must be dismissed.

The appellee, Frances G. Holden, and Dr. Stanley Holden, who is not a party to this litigation, were divorced in Luzerne County, Pennsylvania, following extended and complex proceedings. A property settlement agreement was entered into between the parties to the divorce action which provided *inter alia* for alimony for Frances G. Holden during her lifetime. Subsequently, Dr. Holden married Diane Holden, the appellant herein, who has been a resident of the State of Texas at all times relevant to this action.

The appellee commenced the present action in Luzerne County. The complaint was served on Diane Holden at her residence in Humble, Texas on November 6, 1985. She did not file a responsive pleading and on December 18, 1985 a notice of intention to take default judgment was sent to her. On January 13, 1986 default judgment as to liability was entered against the appellant who filed a petition to open the default judgment on May 7, 1986. The petition to open alleged lack of personal jurisdiction over the appellant. The court below denied the petition and this appeal followed.[1]

The basis for jurisdiction over Diane Holden, if it exists, would be found in the Pennsylvania Long Arm Statute which provides in part at 42 Pa.C.S. § 5322(a)(4):

(a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

.  .  .  .  .

---

1. In footnote 1, the dissenting opinion posits that we are deciding a question not before this court in ruling on the sufficiency of the complaint. When the appeal is from an order refusing to open judgment, we must rule on the sufficiency of the complaint as to appellant to determine if the court below had jurisdiction over the appellant and if it did not, then the default judgment was a nullity and must be set aside. *DeFay v. McMeekin*, 352 Pa.Super. 409, 508 A.2d 324 (1986).

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

The appellant has had no contact with Pennsylvania at all. The settlement agreement was reached in Pennsylvania between the appellee and Stanley Holden, but Diane Holden was not a party to the divorce proceedings or the settlement agreement. The complaint alleges factually that "Defendant [Diane Holden] has induced Stanley J. Holden to breach said contract by threatening to dissolve her marriage to Stanley J. Holden if he complied with said contract." The other allegations are that the appellant "induced" Stanley Holden to breach his contract and prevented him from complying with the terms of the settlement agreement, and has "interfered with the contractual relationship" between Stanley Holden and Frances Holden. The complaint also alleges that appellant has negligently inflicted emotional distress upon the appellee. None of the allegations set forth any activities by the appellant in Pennsylvania.

The Pennsylvania Long Arm Statute does not permit our courts to extend their jurisdiction to persons beyond the boundaries of this Commonwealth except in limited circumstances. Beginning with *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), innumerable cases have stated that in order for a state to fulfill the requirement of due process, it may exercise personal jurisdiction over a non-resident defendant only if there are "minimum contacts" between the defendant and the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. The defendant's conduct must be such that it is reasonable and fair to require him to defend his actions in a foreign state. *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). The Supreme Court of the United States has noted that there are "territorial limitations on the power of the respective states." *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958).

In the case before us, the appellant performed no acts in Pennsylvania, but it is alleged that she interfered in Texas with performance of a contract made in Pennsylvania. The complaint seeks to embroil the appellant in the long continued and bitter dispute between appellee and her former husband, Dr. Stanley Holden. The predecessor to the current Long Arm Statute was found at 42 Pa.C.S. § 8305, (Purdon Supp.1974–75), which was repealed in 1976. Chief Justice Nix discussed conduct by a defendant occurring outside of the state which has a harmful effect upon one within Pennsylvania in the context of 42 Pa.C.S. § 8305 in *Kenny v. Alexson Equipment Company,* 495 Pa. 107, 116–117, 432 A.2d 974, 979 (1981) stating:

> Section 8305 "... requires that (1) the non-resident [shall] have acted outside of Pennsylvania, (2) his action [shall] have caused 'any harm' within Pennsylvania, and (3) the cause of action [shall] have arisen out of the conduct causing the harm" *B.J. McAdams, Inc. v. Boggs,* 426 F.Supp. 1091, 1098 (E.D.Pa.1977). This section is a formulation of what has been termed the "effects test" of extra-territorial jurisdiction. Under the "effects test," derived from the American Law Institute's Restatement (Second) of Conflict of Laws § 37 (1971):

> > A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.

In *Kenny v. Alexson Equipment Company, supra,* the Supreme Court dismissed a complaint by a Pennsylvania resident against a non-resident individual, Mr. Piracci, Sr., who never did business nor maintained an office in Pennsylvania. Mr. Piracci sold a hoist in Maryland which was eventually used in Philadelphia, Pennsylvania. Allegedly, the hoist caused injuries because of a defect in it. The court stated at 495 Pa. at 117, 432 A.2d at 980:

... the issue of whether Piracci, Sr. can be subjected to the jurisdiction of the courts of this Commonwealth does not end with a finding that his activities allegedly come within the literal language of the Long–Arm Statute.

The analysis of whether a state may exercise jurisdiction over a non-resident individual must be tested against both statutory and constitutional standards. The due process clause of the Fourteenth Amendment imposes a limit on the state's exercise of jurisdiction over a non-resident defendant. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).[2]

■ As noted above, the due process requirements as set forth in *International Shoe Company v. Washington, supra* are that there must be minimum contacts with the forum state and this necessitates an examination of the facts in each case. *Vacu–Maid, Inc. v. Covington*, 530 P.2d 137 (Oklahoma Appellate Division 1974). In the instant case, the acts complained of occurred in Texas and consisted principally of the appellant threatening to leave her husband if he complied with the terms of the agreement between her husband and his former wife. The appellant, at most, only indirectly harmed the appellee. It was the

2. The dissenting opinion interprets *Kenny v. Alexson Equipment Company, supra,* in a manner to support its theory that the court had jurisdiction over the appellant in our case. The dissent overlooks the basic principle that our courts do not have jurisdiction over persons beyond the boundaries of our Commonwealth, except where it is granted by statute. The dissent would seek to extend rather than restrict jurisdiction. In *Kenny,* which dealt with a commercial rather than a family matter, the court refused to extend jurisdiction even where the injury occurred in Pennsylvania. As noted in the dissenting opinion in our case, the Supreme Court stated in *Kenny* at 495 Pa. 126, 432 A.2d 984, that jurisdiction would not be extended over a non-resident seller "in the absence of purposeful participation by the seller in a continuous distributive chain of such product ..." The dissent reasons that the appellant engaged in purposeful activity calculated to cause harm in Pennsylvania. In order to be subject to *in personam* jurisdiction, one outside the state must have some minimum contact with Pennsylvania. In our case, the appellant's conduct was directed toward her husband. What he did might impact on his former wife in Pennsylvania, but the harm to plaintiff by appellant would have been indirect at best. *Kenny, supra,* would appear to be a stronger case for imposing jurisdiction than our own.

appellant's husband who caused *direct* harm, if any, to the appellee by not carrying out the terms of the settlement agreement. In any event, the alleged conduct by the appellant set forth in the complaint is too tenuous to invoke the jurisdiction of our courts under the Long–Arm Statute as the appellant had no contact with the Commonwealth of Pennsylvania.[3]

Our case is analogous to *DeFay v. McMeekin*, 352 Pa.Super. 409, 508 A.2d 324 (1986) in which the plaintiff brought suit against a New Jersey defendant, alleging negligence in an automobile accident which occurred in New Jersey. The plaintiff suffered pain while recuperating in Pennsylvania. The defendant, though served, did not file a responsive pleading and default judgment was entered against him. A petition to open the judgment was denied and an appeal was taken to this court. We stated at 352 Pa.Super. at 411, 508 A.2d at 325:

> Before considering the merit of appellant's argument in favor of opening the default judgment, we must necessarily address appellant's contention that the court lacks personal jurisdiction over him because he is a New Jersey resident and the automobile accident occurred in New Jersey.

We further stated at 352 Pa.Super. 413, 508 A.2d 326:

---

**3.** The dissenting opinion relies on *Skinner v. Flymo, Inc.,* 351 Pa.Super. 234, 505 A.2d 616 (1986) to support its proposition that Pennsylvania has a compelling interest in extending jurisdiction over the appellant. In *Skinner, supra,* the plaintiff was injured in Pennsylvania by a rotary lawn mower which had been certified by the defendant, a non-resident, as meeting certain standards. We held that Pennsylvania courts had no jurisdiction over defendant. We stated at 351 Pa.Super. 240, 505 A.2d 619, 620:

> The critical question in determining whether the defendant has purposefully directed his activities at residents of the forum *is not whether it was foreseeable that defendant's activities would have an injurious effect in the forum state, but whether the defendant's conduct and his connection with the forum state were such that he could reasonably anticipate being "haled" into court there.* (Citing cases). *This question, in turn, must be resolved by examining the defendant's contacts with the forum state.* (Emphasis added.)

Again, we are directed, as we must be, to the contacts, if any, which defendant had with the forum state.

[plaintiff's] suffering of residual harm in [Pennsylvania was] not sufficient to satisfy the constitutional requirement of minimum contacts.

The default judgment in *DeFay, supra,* was vacated for lack of jurisdiction. In the case before us, the harm alleged is residual and not direct.[4] Similarly, in *McDaniel v. Joseph,* 409 F.Supp. 1003 (W.D.Pa.1976) it was determined that a Pennsylvania court did not have jurisdiction over an Ohio resident who was alleged to have engaged in a meretricious relationship with the plaintiff's husband outside of Pennsylvania. The court concluded that the exercise of jurisdiction over the individual alleged to have been interfering with the spousal relationship would confer jurisdiction beyond constitutional limits as "The record in this case does not establish any contact by the defendant with the Commonwealth of Pennsylvania on which jurisdiction can be based." 409 F.Supp. at 1004.

The dissenting opinion's and appellant's reliance on *Rusack v. Harsha,* 470 F.Supp. 285 (M.D.Pa.1978) to establish jurisdiction over the appellant, is misplaced. In *Rusack, supra,* the defendant who resided outside of Pennsylvania, sent defamatory letters to the plaintiff's employer in Mechanicsburg, Pennsylvania. It was alleged that the publication of the defamatory material caused the plaintiff harm in Pennsylvania. The court held that there was a sufficient minimum contact to allow the exercise of jurisdiction, but stated at footnote 5, page 290: "This is a different situation from that where harm is caused outside the state and residual effects are felt inside the state." The court further stated at 470 F.Supp. 290–291:

The "minimum contacts" test does not allow for mechanical application. Also, since *International Shoe* involved the issue of under what circumstances a state could assert personal jurisdiction over an out-of-state

---

**4.** The dissenting opinion finds *DeFay v. McMeekin, supra,* distinguishable from the instant case. Certainly, the facts are different, but *DeFay* focused on the point that although the plaintiff endured pain and suffering in Pennsylvania, the tort occurred in New Jersey and the effect in Pennsylvania was residual.

*corporation* and since many of the subsequent cases dealt with a commercial setting, it is somewhat difficult to apply the reasoning of many of the cases considering the "minimum contacts" test to the case currently before the court. Nevertheless, the "minimum contacts" test is the standard to be applied here. *See Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

It is true today that the vast majority of long-arm statute cases in Pennsylvania deal with commercial transactions or involve a non-resident defendant who transacts business or otherwise acts in Pennsylvania. Hester J. summarized this in *Pecot, Inc. v. Sirianni,* 295 Pa.Super. 462, 467, 441 A.2d 1324, 1327 (1982):

> Long-arm statutes were designed to provide an effective and convenient means of redress for resident plaintiffs who happen to experience the adverse effects of a non-resident defendant's interstate activities; *they were designed to warn non-resident defendants that they could not escape the consequences of litigation in a jurisdiction where they voluntarily chose to act.* (Emphasis added.)

█ Nevertheless, our courts may not reach out and extend jurisdiction over a defendant who has no contact with Pennsylvania and whose acts at best have a residual effect upon one in Pennsylvania. The concepts of fair play and substantial justice would be subverted if we allowed a Pennsylvania court to exercise jurisdiction over a Texas resident in circumstances such as those before us. The dissenting opinion focuses on the domicile of the plaintiff rather than on the defendant's non-resident status and lack of meaningful contacts with Pennsylvania. The minimum contact requirement with the forum state also guarantees that individual states do not exceed the limits placed on them by their status as co-equal sovereigns under our federal system. *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

As noted above, most cases dealing with the Pennsylvania Long Arm Statute are in a commercial context, and contacts or lack thereof, with the forum state, are readily discernible. We are dealing in this case with a complaint that alleges a psychological tort involving a family relationship. A plaintiff may not create a cause of action by alleging tortious interference with a contract arising from a settlement agreement in a divorce case, where the facts establish that the defendant is not subject to the jurisdiction of the court. Untold mischief could be caused by drawing a party into a dispute that is before the courts of this Commonwealth, where that party is outside the Commonwealth and has no contact with Pennsylvania. In this case before us, a prolonged and bitter dispute has ensued between Frances G. Holden and her former husband, Dr. Stanley Holden. We may not extend the jurisdiction of our courts to embroil Diane Holden in this dispute.

Order of the court below is set aside and the judgment is opened.

CIRILLO, President Judge, files concurring opinion joined by ROWLEY, MONTEMURO and JOHNSON, JJ.

BROSKY, J. files dissenting opinion.

CIRILLO, President Judge, concurring:

Because I disagree with the majority's disposition of this case, I respectfully concur.

As this court held in *DeFay v. McMeekin*, 352 Pa.Super. 409, 508 A.2d 324 (1986), a procedurally identical case, where a Pennsylvania court lacks personal jurisdiction over an out-of-state defendant, a default judgment entered against such a defendant is a nullity and, therefore, we need not reach the merits of appellant's argument in support of opening the default judgment. *Id.*, 352 Pa.Superior Ct. at 413, 508 A.2d at 326. When a court is powerless to enter a judgment, any judgment entered by that court is invalid at its inception and a subsequent petition to open that judgment is similarly outside the jurisdiction of that

court. *See In re Patterson's Estate,* 341 Pa. 177, 19 A.2d 165 (1941) (an adjudication of a court without jurisdiction is void).

The majority correctly finds that Pennsylvania does not have personal jurisdiction over Diane Holden and that, therefore, the chancellor had no power to enter a default judgment against her. It then resolves this case by opening that judgment. When this court reverses the denial of a petition seeking to open a judgment, we are, in essence, saying that the chancellor erred in not having granted it. We cannot say both that there was no jurisdiction for him to act *and* that he should have granted the relief sought. Opening the judgment is clearly an exercise of the jurisdiction over this defendant which we have said the court below lacked. The majority's disposition tacitly acknowledges the jurisdiction of our courts over Diane Holden even while declaring that no such jurisdiction existed. This is logically inconsistent.

For the foregoing reasons, I would vacate the default judgment for lack of jurisdiction, set aside the order denying the petition to open that judgment as moot, and dismiss the underlying complaint.

ROWLEY, MONTEMURO and JOHNSON, JJ., join.

BROSKY, Judge, dissenting:

I respectfully dissent. I would affirm the order denying appellant's petition to open default judgment.

Initially, I cannot concur in the majority's determination that "the alleged conduct by the appellant set forth in the complaint is too tenuous to invoke the jurisdiction of our courts under the Long–Arm Statute." This conclusion involves a misunderstanding of both the nature of the tortious conduct alleged, as well as the situs of the harm flowing from the alleged conduct.

The majority begins its analysis by asserting that Frances Holden's complaint does not allege any contact with Pennsylvania, or activities in Pennsylvania, by Diane Hol-

den that would make it fair or reasonable to subject her to suit in a foreign forum. This ignores the clear gravamen of what Frances Holden is pleading: a tortious interference by Diane Holden with the contractual relationship between Frances and Stanley G. Holden forged in Pennsylvania.

To set forth a cause of action in Pennsylvania for intentional interference with a contractual relationship, four elements must be pled:

(1) the existence of a contractual relation between the complainant and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual legal damage as a result of the defendant's conduct.

See *Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1343 (1987); see also *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 471 (1979).

The Restatement (Second) of Torts defines "actual damages" for interference with a contract as follows, at § 774A:

§ 774A. Damages.

(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for

(a) the pecuniary loss of the benefits of the contract or the prospective relation;

(b) consequential losses for which the interference is a legal cause; and

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference. . . .

An even cursory glance at Frances Holden's allegations indicates that a cause of action for intentional interference with a contract is precisely what she has pled: she is alleging that Diane Holden took purposeful action, in the

form of threats of marital dissolution, with the specific intent of inducing Stanley Holden to breach his Pennsylvania settlement agreement with Frances Holden, thereby causing Frances Holden actual legal damage, including pecuniary loss and emotional distress. This, clearly, is a contact of sorts with Pennsylvania. It therefore remains to be determined whether the allegations, if presumed true, permit our courts to assert jurisdiction over Diane Holden, under the "minimum contacts" test established by *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.

As noted by the majority, the "minimum contacts" test is not to be applied mechanically, but requires an examination of the facts in each case. In its discussion, the majority places reliance upon, primarily, three Pennsylvania decisions, and concludes that Diane Holden's actions, at best, have caused "indirect" or "residual" harm to Frances Holden, thereby making any exercise of jurisdiction by Pennsylvania a subversion of fair play and substantial justice. As I find all three decisions relied upon by the majority to be distinguishable, I disagree.

The first, *Kenny v. Alexson Equipment Co.*, 495 Pa. 107, 432 A.2d 974 (1981), concerns an elevator hoist, which was originally sold in Maryland, to a New Jersey retailer, and eventually shipped to Pennsylvania, where it injured a Pennsylvania resident. The Pennsylvania resident brought suit against the New Jersey retailer, who then attempted to join the Maryland seller as an additional defendant, based upon the predecessor statute to the current Long Arm Statute.[1] The Supreme Court held that in personam jurisdiction could not be extended to subject the Maryland seller to suit in Pennsylvania.

In its analysis of *Kenny*, the majority focuses upon the Maryland manufacturer's failure to maintain an office or do business in Pennsylvania, and analogizes this to Diane Holden's commission of the complained of interference exclusively within Texas, and concludes that, under *Kenny*,

1. 42 Pa.C.S. § 8305.

her behavior has at best resulted in indirect extra-territorial harm too attenuated to invoke Pennsylvania jurisdiction. This, however, ignores a crucial part of the *Kenny* holding:

We therefore hold that when an individual seller, not doing business within the Commonwealth, transacts an isolated sale outside the Commonwealth to an unrelated buyer, the causing of a harmful effect in itself, within the Commonwealth or the mere entry of that single product into the stream of commerce within the Commonwealth, *in the absence of purposeful participation by the seller in a continuous distributive chain of such product* is insufficient to satisfy the minimum contacts requirement of due process and such seller cannot be found amenable to *in personam* jurisdiction pursuant to Pennsylvania's Long–Arm Statute. . . .

*Id.,* at p. 984. (Emphasis supplied.)

In holding the Maryland seller beyond the jurisdiction of the forum state, the Supreme Court, in its analysis of the seller's contacts with Pennsylvania, did not rely solely upon the number of contacts (one), or the location of the seller and his business activities (Maryland): it was the lack of any *purposeful activity,* calculated to impact upon the forum, that was the key to the Court's holding that the transaction in question had been too attenuated to justify an assertion of jurisdiction.

The issue of purposeful, as opposed to chance or random, activity, is not of little consequence. As our Court noted in *Skinner v. Flymo, Inc.,* 351 Pa.Super. 234, 505 A.2d 616, 621 (1986):

. . . if the efforts of [an actor] are "purposefully directed toward residents of the forum state, the absence of the actor's physical contacts with the forum cannot defeat an assertion of personal jurisdiction in that state. (cite omitted). Indeed, even a single act by a foreign defendant within the forum state may support jurisdiction, though that act will not be sufficient if its nature and the quality of the circumstances of its commission create only an "attenuated" affiliation with the forum. (cite omitted)

Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." (cite omitted).

Factors to be considered include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." (cites omitted).

These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, *where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. . . ."*

*Id.,* citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (Emphasis supplied.)

In the matter *sub judice,* Frances Holden is alleging very purposeful activity on the part of Diane Holden, calculated to have a direct impact upon a Pennsylvania resident. She is not averring that, by mere chance or happenstance, Diane's threats indirectly caused Stanley to harm Frances, but that Diane deliberately made those threats with the *specific intent* of inducing Stanley to neglect his Pennsylvania contractual obligations, and that the harm to Frances *directly* resulted from Diane's purposeful interference.

As the *Kenny* holding is conditioned in part upon a finding of non-purposeful activity, it would not appear controlling in this case, in the absence of any meaningful evaluation of other factors pertinent to a determination of personal jurisdiction, such as the policy considerations delin-

eated in *Skinner*, supra.[2]  As I am of the view that the complaint alleges purposeful activity, in the form of an intentional tort, I believe the remaining question of pertinence to a finding of "minimum contacts" is a determination of the situs of the harm resulting from the intentional tort.  It is at this point that a discussion of the latter two decisions relied upon by the majority, is warranted.

The majority cites as analogous to the matter before us, the case of *DeFay v. McMeekin*, 352 Pa.Super. 409, 508 A.2d 324 (1986).  In *DeFay*, a Pennsylvania resident was injured in a New Jersey automobile accident.  The other driver was a New Jersey resident.  Upon returning home to recuperate, the Pennsylvania resident filed a negligence suit against the New Jersey resident.  In holding that the New Jersey resident did not have sufficient "minimum contacts" with Pennsylvania for our courts to exercise jurisdiction, our Court, citing to *Hilferty v. Neesan*, 506 F.Supp. 218 (E.D.Pa.1980), noted the following:

> ... the mere fact that a plaintiff may have some residual pain and suffering while recuperating in the forum state from an accident which occurred entirely out of the state is not the type of harm 'caused in the Commonwealth' which is contemplated by the long arm statute....
>
> \*    \*    \*    \*    \*    \*
>
> ....The sole contact appellant has with the forum in the instant action is appellee's suffering of residual harm in the forum.  This is not sufficient to satisfy the constitutional requirement of minimal contacts.  Thus, under both

**2.**  Provided a showing of "minimum contacts" is made, this situation would appear one in which, under *Skinner*, Pennsylvania has compelling policy interests in resolving the controversy.  Taking the complaint as true, Diane Holden has thoroughly disrupted the performance of a Pennsylvania agreement, intended to resolve matters of alimony, property, and educational support of the Holden children, in a Pennsylvania divorce, thereby bringing financial and emotional hardship upon a Pennsylvania resident.  It cannot be seriously averred that Pennsylvania would have no significant interests in assuring that the behavior of non-residents does not nullify Pennsylvania contracts.  To aver otherwise would be the equivalent of implying that legally enforceable Pennsylvania contracts may be disregarded at will, as meaningless verbiage, by non-residents.

statutory and constitutional analysis, the court did not have personal jurisdiction over appellant at the outset of this action.

*DeFay,* supra, at p. 326.

*DeFay* is clearly distinguishable, and in fact supports a finding that the harm to Frances Holden was not residual to the forum, but actually suffered in the forum. In *DeFay,* the harm to the plaintiff was inflicted by the accident in New Jersey, *at the situs of the accident;* upon returning home to recuperate, she merely "carried her harm", so to speak, back to the forum state. Such harm, clearly, was at best residual harm within the borders of Pennsylvania.

By contrast, the harm suffered by Frances Holden did not occur at the situs of the tort. While Diane Holden's alleged tortious behavior took place in Texas, the resultant harm included, as set forth in the complaint: (1) the termination of utility services to Frances Holden's home; (2) the incurring of loan and legal expenses; (3) the loss of alimony; (4) the interruption of the children's college educations; (5) the loss of insurance protection; and (6) emotional pain and suffering, including harm to reputation. These harms did not take place in Texas; they were incurred by Frances Holden and her children *within Pennsylvania.* They were not merely "carried home" to Pennsylvania, as were the plaintiff's injuries in *DeFay.* Hence, contrary to the majority's reading, I find *DeFay* supportive of an extension of in personam jurisdiction in this matter: the case defines residual harm, *inter alia,* to be that harm which is incurred by a complainant in one state, and brought into the forum solely due to the complainant's residency in the forum. The harm pled by Frances Holden simply does not fall within the parameters of this definition.

The majority finds another analogous decision in *McDaniel v. Joseph,* 409 F.Supp. 1003 (W.D.Pa.1976), in which the district court granted a motion to dismiss due to a lack of in personam jurisdiction over the defendant. In that case, a Pennsylvania plaintiff filed suit against an Ohio defendant, alleging that the defendant had engaged in meretricious

relations with the plaintiff's husband. The plaintiff conceded that the relations had occurred in Ohio and West Virginia, and not in Pennsylvania.

However, in holding that the defendant had no "minimum contacts" with Pennsylvania, the court neglected to discuss the nature or situs of the harm alleged in its rationale. In point of fact, the decision is, at best, sketchy on its recounting of the operative facts. In the absence of a more detailed rationale in support of its decision, I fail to find the district court's disposition in *McDaniel* to be even marginally persuasive, and find the majority's reliance upon its holding to be misplaced.[3]

A more persuasive opinion is that of *Rusack v. Harsha,* 470 F.Supp. 285 (M.D.Pa.1978), which the majority has found inapplicable *sub judice.* In *Rusack,* a Washington, D.C. resident had sent defamatory letters to the plaintiff's employer in Pennsylvania. In upholding the long-arm jurisdiction of Pennsylvania over the defendant, the court noted that the harm to plaintiff had occurred upon publication of the letters in Pennsylvania, and was thus distinguishable from those situations "where harm is caused outside the state and residual effects are felt inside the state." *Id.,* at p. 290.

I find *Rusack* to be directly on point. In both *Rusack* and the matter before us, the precipitating tortious conduct occurred outside the forum state: the defamatory letters in *Rusack* were written in, and mailed from, Washington, D.C., while the contractual interference of Diane Holden took place in Texas. In both cases, however, the conduct did not result in harm until its fruits came to rest in Pennsylvania. Rusack was not harmed by the defamatory letters until they reached Pennsylvania, and Frances Holden did not have a cause of action until she failed to receive

**3.** Moreover, had the *McDaniel* court chosen to delineate its rationale, it would not necessarily be dispositive. Decisions of lower federal courts, albeit instructive, are not binding on state courts, even though a federal question is involved. See *Cianfrani v. John–Manville Corp.,* 331 Pa.Super. 1, 482 A.2d 1049, 1051 (1984); *Commonwealth v. Rundle,* 203 Pa.Super. 419, 201 A.2d 615, 623 (1964).

the appropriate payments, and suffered pecuniary and emotional hardships in Pennsylvania. Unlike the majority, I do not find appellant's reliance upon the well-reasoned *Rusack* to be so misplaced.

Based on the foregoing, I feel that Frances Holden has alleged purposeful tortious activity on the part of Diane Holden, intended to disrupt a Pennsylvania contract, and resultingly cause direct harm to a Pennsylvania resident, and has thus satisfied the "minimum contacts" test of *International Shoe* so as to permit our courts to assert in personam jurisdiction over Diane Holden.

Having resolved the jurisdictional question in appellee's favor, it is necessary to determine whether appellant has satisfied the criteria for the opening of default judgment. Those criteria are well settled, and require a petitioner to demonstrate: (1) that the petition to open was timely filed; (2) that there exists a reasonable explanation or excuse for default; and (3) that there exists a meritorious defense to the allegations of the complaint. *Wolfskill v. Egan*, 350 Pa.Super. 223, 504 A.2d 326, 327 (1986). Upon review of the record below, I am in accord with the trial court's finding that the criteria have not been satisfied, most notably the second criterion pertaining to the excuse for default.

Both below and on appeal, Diane Holden's excuse for default has been that she relied upon her husband's attorney to handle the matter for her. However, it has previously been held that a defendant's belief that his interests are being protected ceases to be justifiable when the defendant is somehow alerted to a possible problem, such as in the receipt of a Rule 237.1 ten-day notice letter. See *Autologic, Inc. v. Christinzio Movers*, 333 Pa.Super. 173, 481 A.2d 1362, 1363 (1984) (held: purpose of Rule 237.1 requirement of service of ten-day notice letter upon party as well as counsel, is to alert party to potential problem, and permit party to take appropriate action prior to entry of default).

In the matter *sub judice*, appellant has admitted to both receiving the ten-day notice letter, and to making no attempt to protect her interests prior to the entry of default.

She cannot now be heard to cry that her deliberate inaction was "reasonable".

As I find no abuse of discretion in the trial court's finding that the second criterion for opening default has not been met, I would affirm the trial court's denial of appellant's petition to open. Hence, I respectfully dissent.