564 A.2d 1299

TANDY COMPUTER LEASING, A DIVISION OF TANDY ELECTRONICS, INC., f/k/a A & A Financial Corporation Appellant,

v.

John DEMARCO, d/b/a Furguson Vending Co. Appellee.

Superior Court of Pennsylvania.

Argued April 13, 1989.

Filed Oct. 4, 1989.

---

Charles O. Zebley, Jr., Uniontown, for appellant.

Jeffrey T. Olup, Charleroi, for appellee.

Before ROWLEY, BECK and MONTGOMERY, JJ.

BECK, Judge:

Appellant, Tandy Computer Leasing ("Tandy") and appellee John DeMarco ("DeMarco") entered into an agreement dated September 15, 1981 for the lease of certain computer equipment and accessories. Tandy maintains a place of business in Texas and the lease by its own terms was deemed made there. The equipment was shipped from Texas to DeMarco, who is a Pennsylvania resident and who conducts no business in Texas. After mailing several payments on the lease to Tandy in Texas, DeMarco returned the equipment to Tandy and failed to make further payments.

Tandy sued DeMarco in Texas for amounts allegedly due under the lease and obtained a default judgment. Tandy then filed the judgment in Fayette County, Pennsylvania, where DeMarco resided, in accordance with the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. § 4306 (1981), and proceeded to attempt to execute on the judgment.

DeMarco initially filed a petition to open the judgment, but later filed an amended petition to open or strike. The petition to strike was exclusively based on DeMarco's contention that the Texas judgment was void for lack of personal jurisdiction. DeMarco alleged that he is a non-resident of Texas, maintains no regular place of business there, has not designated an agent for receipt of service in Texas, and has committed no act nor consummated any transaction in Texas sufficient to confer personal jurisdiction over him on the courts of Texas. Thus, DeMarco

sought to have the court of common pleas deny the Texas judgment full faith and credit and strike it in Pennsylvania.

Tandy filed an answer in response to the petition to strike, alleging that the Texas court did have personal jurisdiction over DeMarco on two grounds. First, Tandy pointed to paragraph 18 of the lease, which states:

This lease ... shall be governed and construed in accordance with Texas law and shall have been deemed to be made in Fort Worth, Texas.

Tandy argued that this constituted a consent to personal jurisdiction in Texas by DeMarco. Tandy further argued that DeMarco had sufficient minimum contacts with the state of Texas to confer personal jurisdiction. These contacts were alleged to be the fact that the lease arose in Texas and provided that Texas law would apply, and that the leased equipment was shipped to DeMarco from Texas.

DeMarco elected to proceed on the petition and answer, without any further development of the factual record. On September 8, 1988, the trial court granted the Petition to Strike, finding that the Texas judgment had been entered without personal jurisdiction. The court found as a matter of law that the choice of governing law provision of the lease did not constitute a consent to jurisdiction and that DeMarco did not have sufficient contact with Texas to give its courts jurisdiction over him. This timely appeal followed.[1]

Tandy states the issues on appeal as follows:

1. Is a foreign judgment enforceable in Pennsylvania when:

a. The defendant has consented in advance to the jurisdiction of the foreign court in his contract with the plaintiff; or

b. The foreign jurisdiction had sufficient minimum contacts with the defendant under that jurisdiction's

---

1. The order of the Pennsylvania Common Pleas Court did not sustain the jurisdiction of the Texas court because that court did not have personal jurisdiction over the appellee. As such it is a final order pursuant to Pa.R.A.P. 341. See comment to Pa.R.A.P. 311(b)(1).

law to permit its exercise of personal jurisdiction over him?

2. When the lower court decides that a foreign judgment is unenforceable because of lack of jurisdiction by considering evidence outside the record, did the lower court err in striking the judgment instead of opening it?

Our review of the trial court's decision to strike is limited to ascertaining whether the trial court manifestly abused its discretion or committed an error of law. *Bittenbender v. Southeastern Pennsylvania Transportation Authority*, 362 Pa.Super. 243, 523 A.2d 1173, *allocatur denied*, 517 Pa. 602, 536 A.2d 1327 (1987).

Consideration of the issues posed must begin with a brief reference to the legal context in which they arise. This context is the Pennsylvania Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. § 4306 (1981) (the "Act"). The Act is grounded in the constitutional obligation of each state to give full faith and credit to the judgments of other states. U.S. Const. art. IV, § 1.[2] The Act provides a simple procedure for the transfer of money judgments rendered by the courts of other states to Pennsylvania. It permits the filing of such a judgment in the courts of common pleas, and provides:

(b) ... A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

*Id.* 4306(b).

The Act also requires that any judgment so filed be accompanied by an affidavit attesting, *inter alia*, that the

2. Article IV, Section 1 of the Constitution, the full faith and credit clause, provides, in pertinent part:
Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State.

foreign judgment "is valid, enforceable and unsatisfied." *Id.* § 4306(c).

These provisions have been interpreted to mean that any foreign judgment properly filed in Pennsylvania must be accorded full faith and credit unless there is "... some particular overriding reason ... which would require us to deny full faith and credit to the judgment.... A lack of personal jurisdiction on the part of the court which originally awarded the judgment or a lack of due process on the part of that court are reasons why the principle of full faith and credit would be denied and the subsequent Pennsylvania judgment stricken." *Everson v. Everson,* 264 Pa.Super. 563, 400 A.2d 887, 891–92 (1979), *aff'd and order modified on oth. grds.,* 494 Pa. 348, 431 A.2d 889 (1981). *See also Barnes v. Buck,* 464 Pa. 357, 346 A.2d 778 (1975); *Morris Lapidus Associates v. Airportels, Inc.,* 240 Pa.Super. 80, 361 A.2d 660 (1976).

On the other hand, such a transferred judgment cannot be stricken or opened simply because the party seeking to open or strike can demonstrate that he/she would have a valid defense to the action if brought in Pennsylvania. Only those defenses, like a lack of personal jurisdiction by the rendering court, which destroy the full faith and credit obligation may form the ground for refusing that judgment full faith and credit. *Morris Lapidus,* 240 Pa.Super. at 85–87, 361 A.2d at 664.

The petition to strike in the instant case falls squarely within the permissible grounds for denying a transferred foreign judgment full faith and credit. The petition asserts a lack of personal jurisdiction by the rendering court which, if proven, destroys the full faith and credit obligation.

■ We now turn to an analysis of the specific allegations of error raised by Tandy. The first focuses on De-Marco's alleged contractual consent to personal jurisdiction in Texas. The gravaman of this argument is paragraph 18 of the lease, set forth above. Tandy urges us to find as a matter of law that this paragraph unambiguously consti-

tutes a consent by DeMarco to personal jurisdiction. Alternatively, Tandy urges that paragraph 18 is ambiguous and presents a question of fact as to its proper meaning, which Tandy argues must be resolved in its favor on the present record. We reject both arguments and find that paragraph 18 unambiguously and as a matter of law does *not* constitute a consent by DeMarco to personal jurisdiction in Texas.

Tandy refers to a single precedent of the Supreme Court of the United States, *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), to support its argument that a choice of law provision in an agreement is, as a matter of law, a consent to personal jurisdiction in the jurisdiction whose law is to govern. Even a cursory review of *National Equipment* reveals that it is not supportive of Tandy's position.

The sole issue presented for decision in *National Equipment* was the proper interpretation of Federal Rule of Civil Procedure 4(d), which authorizes service of process on an individual through service on an agent he has authorized to receive process. The issue arose out of a lease between a New York corporation and Michigan farmers. The lease provided that the farmers appointed a Mrs. Weinberg, a resident of New York and wife of an officer of the New York corporation, as the farmers' agent for service of process in New York. The lease did not provide that Mrs. Weinberg had to notify the farmers if she was served as their agent. Some time later, the New York corporation sued the farmers for alleged defaults under the lease in federal district court in New York and made service on Mrs. Weinberg. Mrs. Weinberg immediately notified the farmers that she had accepted service on their behalf.

The farmers contended that the New York court had no jurisdiction over them in that Mrs. Weinberg should not be considered their authorized agent under Federal Rule 4(d). The Supreme Court disagreed, finding the contractual appointment of Mrs. Weinberg to be valid. The Court buttressed its conclusion by construing the lease as a whole to indicate a clear intent by all parties that New York would

be the jurisdiction to adjudicate disputes arising under the lease. In doing so, the Court noted that the agreement contained a choice of law provision that made New York law controlling.

This reference to the choice of law provision clearly does not constitute a decision that such a provision, without more, is a consent to personal juridiction. *National Equipment*, even broadly construed, establishes only that where a party to a contract appoints a person as their agent to receive process, even though that person has no other relation to the principal, is related to the other party, and has no duty to notify the principal that service has been made, the agent is nevertheless authorized to receive service of process under Federal Rule 4(d).

In contrast to *National Equipment*, which is not on point, we have located ample Supreme Court authority directly relating to the effect of a choice of law provision on personal jurisdiction analysis and finding that such a provision does not determine the personal jurisdiction of the forum state. For example, in the leading case of *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court analyzed the effect of just such a provision and stated, without equivocation:

> .... choice of law analysis—which focuses on all elements of a transaction, and not simply on the defendant's conduct—is distinct from minimum contacts jurisdictional analysis—which focuses at the threshold solely on the defendant's purposeful connection to the forum. ....
> such a provision standing alone would be insufficient to confer jurisdiction....

*Id.* at 482, 105 S.Ct. at 2187 (citing, *inter alia, Hanson v. Denckla*, 357 U.S. 235, 253–54, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *Shaffer v. Heitner*, 433 U.S. 186, 215, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683 (1977)).[3] *See also*

---

3. The *Burger King* Court did indicate that the presence of a choice of law provision was relevant to an analysis of whether the defendant had sufficient minimum contacts with the forum state to justify its exercise of personal jurisdiction over him. We will, therefore, consid-

*Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1029 (5th Cir.1983), *cert. denied.* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984) (choice of law provision is not voluntary submission of defendant to jurisdiction of forum in absence of express understanding to that effect); *Stuart v. Spademan,* 772 F.2d 1185, 1189 (5th Cir.1985) (choice of law provision must be distinguished from choice of forum provision which specifically designates forum wherein actions relating to agreement are to be brought); *3-D Electric Company, Inc. v. Barnett Construction Co.,* 706 S.W.2d 135 (Tex.Ct.App.1986), writ ref. n.r.e.

We agree that a provision in an agreement that the laws of a particular forum are to govern disputes arising under the agreement is not the equivalent of a consent to personal jurisdiction. The language of paragraph 18 of the subject lease determines only that the lease is deemed made in Texas and governed by Texas law. It unambiguously and as a matter of law says nothing else.

This resolution also provides our answer to Tandy's second argument concerning the significance of the choice of law provision, i.e. that it is ambiguous and, therefore, its meaning must be determined from an examination of the evidence concerning the parties' intent in so agreeing, which is a question of fact. We disagree. As Tandy concedes, whether an agreement is ambiguous is a question of law. *Metzger v. Clifford Realty Corp.,* 327 Pa.Super. 377, 476 A.2d 1 (1984). Since we have determined, as did the trial court, that the choice of law provision in this lease is not ambiguous, we find that there is no question of fact to be resolved.

■ Having found that DeMarco did not contractually consent to personal jurisdiction in Texas, we now must proceed to determine the more difficult question of whether he had sufficient minimum contacts with the state of Texas

er the relevance of the choice of law provision in the instant agreement in the course of our analysis of DeMarco's contacts with Texas hereinbelow.

to warrant the exercise of personal jurisdiction over him by the courts of Texas.

Texas has enacted a long-arm statute that authorizes service of process on a non-resident defendant who is "doing business" in Texas. Texas Civil Practice & Remedies Code § 17.042 (Vernon 1986). "Doing business" is defined as including making a contract with a Texas resident under which either party is to perform the contract in whole or in part in Texas. *Id.* This statute has uniformly been construed to intend to reach to the limits of the due process clause of the fourteenth amendment to the United States Constitution in allowing Texas courts to exercise personal jurisdiction over non-residents. *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir.1973).

Service was made on DeMarco pursuant to the Texas long-arm statute. There is no question as to the amenability of DeMarco to service of process under the statute as he was unquestionably "doing business" as defined above. However, the amenability of a non-resident to service of process under the Texas long-arm is not conclusive of jurisdiction. Once it is determined that the law of a forum permits service on the non-resident defendant, a further inquiry must be made as to whether the exercise of jurisdiction comports with due process. *Siskind v. Villa Foundation for Education, Inc.,* 624 S.W.2d 803 (Tex.Ct.App.1981), *aff'd in part, rev'd in part on oth. grds.,* 642 S.W.2d 434 (TX 1982). That is the issue raised in this case.

The due process clause limits the power of a state to assert its jurisdiction over a non-resident defendant. *Helicopteros Nacionales Columbia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984). The purpose of this limitation is to "protect an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger King,* 471 U.S. at 471–72, 105 S.Ct. at 2181–82 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1949)).

In determining whether the Texas court's exercise of jurisdiction over DeMarco was within the mandate of the due process clause, Tandy argues that we must look to the law of Texas. There is authority for this proposition in Pennsylvania. In *Bartholomew Associates, Inc. v. Townhome, Inc.*, 270 Pa.Super. 95, 410 A.2d 1266 (1979), a panel of this court stated that in determining whether to accord full faith and credit to a judgment of a sister state where the judgment is challenged for lack of personal jurisdiction, we must determine the jurisdiction of the rendering court by reference to the law of the state in which the rendering court sits. *Id.*, 270 Pa.Superior Ct. at 99, 410 A.2d at 1268. Thus, we appear to be bound to consider the view of the Texas courts regarding their own jurisdiction. However, since the question of personal jurisdiction arises under the due process clause of the United States Constitution and is, therefore, a question of federal law, *Stuart v. Spademan*, 772 F.2d at 1189, we must be guided in the first instance by the decisions of the Supreme Court of the United States regarding the constitutional limits of the power of the Texas courts. In any event, our research of the law of Texas reveals a faithful application by the Texas courts of the decisions of the Supreme Court pertinent to this issue.

The general principles applicable to a personal jurisdiction analysis are well settled. First, we must focus on whether an individual has had a minimum level of contacts with the forum, such that he/she had fair warning that the activities may subject him/her to the jurisdiction of the forum. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in the judgment). Further, if we are satisfied that such minimum contacts exist, then we must determine whether an assertion of jurisdiction by the forum would comport with "fair play and substantial justice." In doing so, we must consider such factors as " 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtain-

ing convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' " *Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184–85 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

The minimum contacts or fair warning analysis is not resolved simply by counting the number of a non-resident's contacts with the forum state, nor does it turn upon " 'conceptualistic ... theories of the place of contracting or of performance.' " *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185 (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316, 63 S.Ct. 602, 604, 87 L.Ed. 777 (1943)). Rather, in a case such as this, where the forum state seeks to assert jurisdiction over a non-resident in an action that arises from the non-resident's activities in the forum,[4] the fair warning requirement is satisfied if the nonresident has "purposefully directed" his activities at residents of the forum state and the litigation arises from or is related to those activities. *Id.* at 472, 105 S.Ct. at 2181–82. Facts such as those present in the case *sub judice,* i.e. that the non-resident has entered into a contract with a resident of the forum and that the contract is deemed made there, are not determinative in assessing whether the defendant has purposefully directed his activities at the forum. As the *Burger King* Court stated:

> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.... Instead, we have emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves

4. This type of exercise of jurisdiction is referred to as "specific jurisdiction." *Burger King,* 471 U.S. at 473 n. 15, 105 S.Ct. at 2182 n. 15.

are the real object of the business transaction.' . . . It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* at 478–79, 105 S.Ct. at 2185 (quoting *Hoopeston Canning Co.*, 318 U.S. at 316–17, 63 S.Ct. at 604–05).

The decisions of the courts of Texas regarding their jurisdiction over non-resident defendants closely follow these Supreme Court directives. In *U–Anchor Advertising, Inc. v. N.H. Burt*, 553 S.W.2d 760 (TX 1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978), the Supreme Court of Texas reiterated the formula for personal jurisdiction analysis traditionally applied by Texas courts, as follows:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Id.* at 762.

The *U–Anchor* court applied this standard to find no personal jurisdiction over a non-resident defendant who had entered into a contract with a Texas resident for the construction and installation of certain signs. The only contacts of the nonresident with Texas were the execution of the contract with the Texas resident and the mailing of several payments on the contract to Texas. The court held these contacts to be minimal and fortuitous and the assertion of jurisdiction offensive to traditional notions of fair

play and substantial justice. The court summarized its analysis of the non-resident's contacts by characterizing the non-resident as simply "... a passive customer of a Texas corporation who neither sought, initiated, nor profited from his single, fortuitous contact with Texas." *Id.* at 762–63. The court also specifically noted that the fact that the contract was performed by the Texas resident in Texas, where the signs were constructed, was irrelevant in that the Supreme Court had previously held that the unilateral activity of the *resident* in the forum does not constitute a contact of the *non-resident* with the forum. *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

The Court of Appeals of Texas has applied *U–Anchor* to support a finding of no personal jurisdiction in a case strikingly similar to the instant case. In *TM Productions, Inc. v. Blue Mountain Broadcasting Co.*, 623 S.W.2d 427 (Tex.Ct.App.1981), writ ref. n.r.e., the non-resident defendant executed a contract with a Texas resident whereby the resident would license the use of its products to the non-resident. The contract stated that it was deemed made in Texas, governed by the law of Texas, and that jurisdiction over disputes arising under it would be in Texas. Since the court found that the plaintiff had waived reliance on the consent to jurisdiction provision, it proceeded to engage in minimum contacts analysis. The court opined:

> According to *U–Anchor*, the plaintiff's unilateral performance of the contract in Texas is not enough, even when coupled with the defendant's payments in Texas pursuant to a contract requiring such payments; defendant must also have purposely done some act or consummated some transaction in Texas. In this case, the evidence establishes that defendant did nothing in Texas. Neither defendant's telephone calls to plaintiff in Texas ... nor defendant's possible mailing of the contract from Oregon to Texas ... constitutes purposeful activity of defendant in Texas, even though the contract provides that it is not effective until accepted and executed by

plaintiff in Texas. The only other circumstance relied on is the provision that the contract shall be deemed entered into in Texas and shall be interpreted under the laws of Texas. The applicability of the laws of the forum to a particular dispute does not in itself give the court jurisdiction over the parties to that dispute.

*Id.* at 433. *See also 3–D Elec. Co., Inc. v. Barnett Const. Co.,* 706 S.W.2d 135 (Tex.Ct.App.1986), writ ref. n.r.e. (nonresident's making of payments pursuant to contract in Texas coupled with activities of plaintiff in Texas insufficient to constitute minimum contacts).

In contrast, in the more recent case of *Zac Smith & Co., Inc. v. Otis Elevator Co.,* 734 S.W.2d 662 (TX 1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988), the Supreme Court of Texas found the defendant's contacts sufficient to exercise jurisdiction where the defendant, a Florida bonding agent, had been involved over a period of years in continuing negotiations and contractual relationships aimed at the construction of a hotel in Texas. Although the hotel was never built, the defendant had entered into a joint venture for its construction which was wholly performable in Texas and from which the parties anticipated a profit in Texas. In sum, all future consequences of defendant's activity were to occur in Texas. Thus, the court found that the defendant had purposefully directed its activities toward Texas. *Id.* at 665–66.

In reaching this conclusion, the *Zac Smith* court relied heavily on the decision of the Supreme Court in *Burger King* and found a strong analogy between the two cases. In *Burger King,* the Supreme Court found constitutional the assertion of jurisdiction by the State of Florida over a non-resident defendant who had entered into franchise agreements with Burger King, a resident of Florida. There, the Court found that the non-resident had entered into "a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id.* 471 U.S. at 480, 105 S.Ct. at 2186–87. The Court examined the franchise documents and course of

dealing between the parties and found ample evidence that the non-resident was aware that they were becoming involved in a long-term and close relationship with a Florida concern, particularly given Burger King's practice of closely regulating and monitoring all aspects of a franchisee's business from Burger King's main offices in Florida. Finally, the Court noted that the choice of law provision in the franchise agreement, which made Florida law governing, added further weight to its conclusion that the non-resident had deliberately affiliated himself with a Florida resident. *Id.* at 481–82, 105 S.Ct. at 2186–87.

On the basis of these authorities, we conclude that DeMarco had insufficient contacts with Texas to warrant its assertion of jurisdiction over him. The record as developed in the trial court reveals only that the parties entered into a form lease agreement for the rental of computer equipment, that the form lease provides that it is deemed made in Texas and will be governed by that state's laws, and that DeMarco made some payments under the lease by mail to Texas.[5] Both *U–Anchor* and *TM Productions* establish that these activities alone do not constitute activity by DeMarco purposefully directed at Texas.

Nor does this case present any of the circumstances present in either *Zac Smith* or *Burger King* which led those courts to find that the exercise of personal jurisdiction by the forum state was warranted. There is no record evidence that DeMarco engaged in any direct negotiations with residents of Texas leading up to the execution of the lease or went to Texas for that purpose. Nor were the relevant future consequences of the lease to occur in Texas. DeMarco leased the equipment to use in his business in Pennsylvania and it was in fact used there. Thus, the only anticipated future consequence of the lease that would occur in Texas was the mailing of some rental payments there. These contacts alone are simply insufficient.

5. We note that some of the payments made by DeMarco do not appear to have been made to Tandy in Texas. One of the checks is made payable to "Radio Shack" with no address designated and one is made payable to Tandy at a Chicago, Illinois address.

Our conclusion is not affected by the presence of a choice of law provision in the lease which designates Texas law as governing. Although we recognize that such a provision may, under some circumstances, suggest that a non-resident defendant intended to and did invoke the benefits and protections of the law of the forum, we accord such a provision very little weight when it appears in fine print on the back of a form contract, as it does here, and therefore does not bespeak a purposeful decision by DeMarco to avail himself of any particular protection offered by the law of Texas. *See Stuart v. Spademan*, 772 F.2d at 1194–96; *3–D Electric Company, Inc.*, 706 S.W.2d at 144–45.

We find no error in the trial court's conclusion that the Texas court lacked personal jurisdiction over DeMarco and that the Texas judgment is not, therefore, entitled to full faith and credit in Pennsylvania.

■ Finally, Tandy raises a third and more technical allegation of error regarding the propriety of the trial court's order. Tandy argues that the trial court violated a cardinal principle of law in relying on evidence "outside the record" to strike this judgment. Thus, Tandy argues that even if the Texas court was without jurisdiction, the order must be reversed and the case remanded so that the trial court can "open" the judgment and allow "the parties [to] proceed with the case."

We recognize the oft-stated general principle that a judgment may only be stricken for reasons appearing from the face of the record. *Bittenbender, supra.* However, to reverse the trial court decision in this case on this ground would be an exercise in futility for the obvious reason that there is no "case" presently pending in Pennsylvania for these parties to proceed with. There is only a filed foreign judgment which we have determined not to be entitled to full faith and credit in that it was entered without personal jurisdiction. Such a judgment is void. *In re Patterson's Estate*, 341 Pa. 177, 19 A.2d 165 (1941). Thus, it must be vacated, not opened. As President Judge Cirillo stated in his concurrence in *Holden v. Holden*, 374 Pa.Super. 184,

542 A.2d 557 (1988) (en banc) (plurality), *allocatur denied,* 520 Pa. 617, 554 A.2d 509 (1989), where it is determined that a judgment is void because entered without personal jurisdiction, the proper disposition is not to open the judgment, but to vacate it because to do otherwise would be to permit the trial court to proceed further in an action against a defendant over whom personal jurisdiction had not been obtained. *Id.,* 374 Pa.Superior Ct. at 192–94, 542 A.2d at 562 (Cirillo, P.J., concurring, with three judges joining concurrence). *See also DeFay v. McMeekin,* 352 Pa.Super. 409, 508 A.2d 324 (1986) (judgment void for lack of personal jurisdiction must be vacated, not opened). Although in this case the Pennsylvania trial court may well assert personal jurisdiction over DeMarco on Tandy's substantive claims, it has not yet done so because Tandy has not yet sued DeMarco on those claims in Pennsylvania. It has only attempted to execute a void foreign judgment against him.

Thus, although DeMarco captioned his petition in this case as a petition to strike, it would have been preferable for him to have sought to have the foreign judgment vacated on the ground that it was not entitled to full faith and credit because it was entered by a court that did not have personal jurisdiction over DeMarco. We note that the Uniform Enforcement of Foreign Judgments Act itself states that a foreign judgment filed in Pennsylvania is subject to being reopened, vacated or stayed. 42 Pa.C.S.A. § 4306(b). The Act does not refer to the striking of such a judgment. Since it would be inappropriate to open a judgment that is void for lack of personal jurisdiction, vacation appears to be the proper disposition. By striking the judgment as the trial court did, the judgment was effectively vacated and rendered a nullity. *In re Higbee's Estate,* 372 Pa. 233, 93 A.2d 467 (1953); *Metropolitan Federal Savings and Loan Ass'n. v. Bailey,* 244 Pa.Super. 452, 368 A.2d 808 (1976). Thus, we must affirm the trial court as having properly adjudicated this judgment to be void and not subject to opening.

The order of the trial court is affirmed.