581 A.2d 629

**FIRST FIDELITY BANK, N.A., NEW JERSEY, Formerly known as First National Bank of New Jersey, a National Banking Association, Appellant,**

v.

**STANDARD MACHINE & EQUIPMENT COMPANY, a Pennsylvania Corporation, Frank Carlow and Michael Carlow.**

Superior Court of Pennsylvania.

Argued Aug. 21, 1990.

Filed Oct. 17, 1990.

Petition for Allowance of Appeal Denied March 15, 1991.

608

Wayne H. Port, Uniontown, for appellant.

William E. Duffield, Uniontown, for appellees.

Before POPOVICH, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

This is an appeal from an order granting defendants' petition to vacate a New Jersey judgment that had been duly entered against them in Pennsylvania. We are asked to determine whether New Jersey's exercise of jurisdiction over the defendants comported with constitutionally required due process. Finding that New Jersey's exercise of jurisdiction was proper, we reverse.

Defendants Standard Machine & Equipment Company and Frank Carlow and Michael Carlow (collectively referred to hereinafter as Standard) entered into a lease agreement on January 16, 1984 under which Standard leased computer equipment from Ceres Capital Corporation. The leased equipment is located in Uniontown, Pennsylvania, Standard's place of business. Ceres Capital Corporation is a New York corporation.

On the same day the parties executed, as part of the lease agreement, an individually typed (not a form) agreement to assign the lease to the entity now called First Fidelity Bank, N.A., New Jersey, which at the time of this transaction was First National State Bank, New Jersey (First Bank). Frank Carlow executed this agreement on behalf of Standard. Under the agreement:

> The Company [Standard] hereby acknowledges and consents to the assignment by Lessor to First National State Bank ... of Lessor's estate, right, title interest; claim and demand in, to and under the Lease, and the rental payments due under the Lease....
>
> ....
>
> The Company [Standard] agrees so long as [First Bank] has not violated the Company's right of quiet enjoyment (i) to remit and deliver all Monies assigned to [First Bank] as indicated above directly to [First Bank].

Lease Agreement of January 16, 1984. Standard further agreed to deliver all communications to First Bank in New Jersey, agreed not to modify or terminate the lease without First Bank's consent, agreed that Standard's remedies for breach were solely against First Bank, and agreed that insurance proceeds were to be paid to First Bank, pursuant to the original lease agreement.

By letter of February 29, 1984, First Bank advised Standard that the assignment had been effected pursuant to the consent to assignment agreement. The letter reminded Standard that, under the agreement, Standard was required to name First Bank, assignee, loss payee and/or co-insured under its liability and casualty policies. As requested by First Bank, Standard signed a copy of the letter (signature dated 3/6/84) and returned the copy to First Bank. This return copy was date-stamped as received by First Bank on March 9, 1984. On March 13, 1990 First Bank filed a financing statement with the Secretary of the Commonwealth of Pennsylvania perfecting its security interest in the equipment pursuant to the Uniform Commercial Code, 13 Pa.C.S. §§ 9302 and 9401 *et seq.* The purpose of this filing was to reserve title to the creditor against possible future creditors of Standard. *Rodi Boat Co. v. Provident Tradesmens Bank and Trust Company,* 236 F.Supp. 935 (E.D.Pa.1964), *affirmed* 339 F.2d 259 (3d Cir.1964).

Standard sent payments to First Bank in New Jersey but in early 1987 Standard ceased making payments. First Bank then instituted an action in New Jersey against Standard. Standard was personally served with process in Pennsylvania. Standard made no appearance, and on June 15, 1987, the New Jersey court entered a default judgment against Standard. The judgment was transferred to Fayette County, Pennsylvania on September 2, 1987. Standard collaterally attacked the New Jersey judgment by petitioning the Pennsylvania court to strike the judgment on the grounds that New Jersey lacked personal jurisdiction over Standard and thus could not have rendered judgment there. First Bank filed an answer and new matter on Oct. 27, 1987,

after which Standard did nothing. First Bank petitioned the court to order Standard to proceed under Pa.R.C.P. 209. Finally, on February 2, 1989 the court placed the case on the argument docket and ordered briefs filed. On January 11, 1990 the court granted Standard's petition to vacate the judgment. In an opinion accompanying the order, the court explained that Standard's contacts with New Jersey were insufficient to establish personal jurisdiction, thus rendering the New Jersey judgment invalid. First Bank appealed.

First Bank argues that, under New Jersey law establishing the basis for personal jurisdiction in that state, the trial court's conclusion was legally incorrect. We agree and reverse. First we will set this action in its legal context, the Pennsylvania Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306. The act codifies the constitutional obligation of each state to give full faith and credit to judgments rendered in other states. U.S. Const. art. IV, § 1. The provisions of the act have been interpreted to mean that any foreign judgment properly filed in Pennsylvania must be accorded full faith and credit unless there is a particular overriding reason that requires us to deny full faith and credit to the judgment. *Tandy Computer Leasing v. DeMarco,* 388 Pa.Super. 128, 564 A.2d 1299 (1989).

 It is established practice for Pennsylvania to entertain an attack on a foreign judgment even though the defendant did not appear in that forum to defend on the basis of lack of personal jurisdiction. While the party challenging the foreign judgment may not attack the transferred judgment by raising any and all defenses (a judgment is entitled to full faith and credit in the transferee state even though the underlying claim would not be enforced in that forum, *Morris Lapidus Associates v. Airportels, Inc.,* 240 Pa.Super. 80, 361 A.2d 660 (1976)), the defense of lack of personal jurisdiction over the defendant by the judgment-rendering state is a situation under which the full faith and credit principle has no effect. If this situation exists, the subsequent Pennsylvania judgment is properly stricken. *Tandy, supra; Everson v. Everson,* 264 Pa.Su-

per. 563, 400 A.2d 887 (1979), *affirmed and order modified on other grounds*, 494 Pa. 348, 431 A.2d 889 (1981).

We now reach the merits, whether New Jersey had jurisdiction over First Bank's action against Standard. To decide this question, we must look to the law of New Jersey. *Tandy, supra; Bartholomew Associates, Inc. v. Townhome, Inc.*, 270 Pa.Super. 95, 410 A.2d 1266 (1979). As personal jurisdiction is a question of federal constitutional law arising from the due process clause, New Jersey's analysis is guided by the decisions of the Supreme Court of the United States on this subject:

> It is clear that New Jersey has exercised its jurisdiction over nonresidents to the outermost limit permitted by the United States Constitution (citations omitted). Due process does not require that a defendant have a corporate or individual presence in the forum in order to be subject to an *in personam* jurisdiction, but merely that "he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (citation omitted). The defendant's contacts with the forum state must be such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). Defendant is deemed to have notice that it may be subject to suit when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).

*Dave's Trash Removal v. Charm City*, 214 N.J.Super. 497, 500–501, 520 A.2d 415, 417 (1987). As articulated by the Supreme Court of New Jersey, this boils down to a two-part test having as its two central aspects "minimum contacts" and "fair play and substantial justice." *Lebel v. Everglades Marina*, 115 N.J. 317, 558 A.2d 1252 (1989).

■ If the cause of action relates directly to the specific contacts at issue, and if the court seeks to subject the defendants to its jurisdiction only with regard to this claim, as in this case, then it is said to be a specific jurisdiction situation. The inquiry in a specific jurisdiction case focuses on "the relationship among the defendant, the forum, and the litigation." *Lebel*, 115 N.J. at 323, 558 A.2d at 1255, *quoting Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683, 698 (1977). With regard to specific jurisdiction, the minimum contacts requirement is satisfied if the contacts with the forum resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff, as a result of which he could reasonably anticipate being haled into court there. *Lebel*, 115 N.J. at 320, 558 A.2d at 1255, *citing World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

■ Cases in which a contract is the basis of the cause of action constitute a particular subset of special jurisdiction cases. It is sufficient under the United States Constitution for purposes of due process that the suit be based on a contract having substantial connection with the forum state, *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), *cited in Govan v. Trade Bank & Trust Company*, 109 N.J.Super. 271, 263 A.2d 146 (1970), and jurisdiction is proper where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state. *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–2184, 85 L.Ed.2d 528, 542 (1985), *citing McGee*, 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226. In *Burger King* the Supreme Court reasoned that the sufficiency of the connection between the contract and the forum should not be decided on the basis of traditional mechanical tests:

> [W]e have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction" (citation

omitted). It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545.

█ In the present case, Standard is a business to which we can impute a reasonable degree of sophistication. Moreover, this is not a case in which a customer, whether business or individual consumer, has returned a product and has stopped further payments, as in *Tandy, supra.* The *Tandy* agreement was a form lease. Not so in the present case, in which an integral and specifically bargained-for part of the agreement was that First Bank, a New Jersey entity, would immediately become the assignee of the equipment lease and that First Bank would assume all rights and duties under the equipment lease. Standard retained the equipment upon which it had ceased making payments, equipment in which Standard should have reasonably known First Bank to have a security interest. We conclude that by this course of action Standard purposely created contacts with New Jersey. The contacts, consisting of the prior negotiations, contemplated future consequences and the parties' actual course of dealing flowing from the contract, rather than being random, fortuitous or attenuated, were sufficient to satisfy the minimum contacts prong of the due process analysis.

█ Having decided that Standard purposefully established minimum contacts within New Jersey, we now may consider other factors to determine whether, under New Jersey law, the state's exercise of jurisdiction over Standard comports with "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543, *citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102. These factors include the burden on the defendant, the forum state's

interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543, *citing World–Wide Volkswagen.* We must also keep in mind that when a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–2185, 85 L.Ed.2d at 544.

Standard fails to establish a compelling case that additional considerations render New Jersey's exercise of jurisdiction over itself unreasonable. Standard argues only that minimum contacts were lacking, a contention we have rejected. Standard fails to set forth any reasons why litigation in New Jersey would have been unduly burdensome. New Jersey courts have, however, spoken to New Jersey's interest in cases such as this one, in which a New Jersey entity is a material participant in a business deal consummated in a neighboring state but having a substantial effect in New Jersey:

> In New Jersey there are special problems in commercial transactions since this State is situated in a commercial corridor between highly developed areas of New York and Pennsylvania, both of which contain the principal offices of many large corporations maintaining subsidiaries in our State. The business of New Jersey requires that our many merchants, suppliers and contractors deal on a guaranteed basis with often thinly capitalized subsidiaries of large out-of-state corporations. On a policy basis also, this court finds that such jurisdiction as may be based upon out-of-state guarantees of New Jersey leases, or like transactions, should be upheld, where traditional notions of fair play and substantial justice are not offended [by other factors].

*Unicon Investments v. Fisco, Inc.,* 137 N.J.Super. 395, 403, 349 A.2d 117, 122 (1975).

In *Unicon,* the court found that New Jersey's exercise of jurisdiction over a Pennsylvania defendant to collect on its general guarantee of its subsidiary's obligations under a lease of New Jersey realty did not violate notions of fair play and substantial justice. The court pointed out, based upon the above rationale, that New Jersey does not require a physical act to be done within the state, nor does it require the transaction of business in New Jersey. That the present case involves an assignee bank rather than a corporate subsidiary renders the above rationale no less applicable. For instance, in another similar case, *Govan v. Trade Bank & Trust Company, supra,* the court found that New Jersey could properly exercise jurisdiction where non-residents signed a promissory note payable to a New Jersey bank. As the *Burger King* court wrote:

> A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors (citations omitted). Moreover, where individuals "purposefully derive" benefit from their interstate activities, (citation omitted), it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. (citation omitted).

*Burger King,* 471 U.S. at 473–474, 105 S.Ct. at 2182–2183, 85 L.Ed.2d at 541. *See also Alchemie International, Inc. v. Metal World, Inc.,* 523 F.Supp. 1039 (D.N.J.1981) for a discussion of the state interest factor.

In support of its position that New Jersey improperly exercised jurisdiction, Standard relies upon *Tandy Computer Leasing v. DeMarco, supra,* in which, as in this case, the defendant challenged, on the basis that the forum (Texas) lacked personal jurisdiction, the judgment duly transferred to Pennsylvania. We interpreted Texas law in light of the decisions of the United States Supreme Court regarding minimum contacts and agreed that Texas had overreached. In the present case, the facts establish minimum contacts, and Standard has produced no evidence showing how it would be unduly burdened by litigating this claim in New Jersey. We interpret New Jersey law in light of these decisions and find ample support for our conclusion that New Jersey's exercise of jurisdiction over Standard was based upon the constitutional requisites of minimum contacts and fair play and substantial justice. We conclude that New Jersey properly exercised jurisdiction over Standard and that the duly rendered judgment against Standard is valid and must be accorded full faith and credit in this Commonwealth. Hence, we reverse the order vacating the judgment.

Order vacated. Case remanded for reinstatement and execution on the judgment. Jurisdiction relinquished.