**Sisson v. Newton Memorial Hospital**

*Thomas Earl Mincer,* for plaintiff.

*Paul A. Barrett,* for defendant, Newtown Memorial Hospital.

*George M. Nace III,* for defendants, Roland E. Johnson, M.D. and Ruby G. Bendersky, M.D.

THOMSON, *P.J.,* June 5, 1995—This case arises out of this court's order of December 1, 1994, finding that we lacked jurisdiction over the defendants, Newton Memorial Hospital, Roland E. Johnson, M.D. and Ruby G. Bendersky, M.D., and dismissing the case. Plaintiff, Donna Sisson has appealed from that order. By our order of December 28, 1994, we directed the plaintiff to file a concise statement of matters complained of on appeal. Plaintiff complied with our order, and on January 6, 1995 filed said statement of matters complained of on appeal.

## PROCEDURAL & FACTUAL BACKGROUND

Plaintiff has assigned six errors to our order. All assertions of error are essentially premised on a single allegation: that the Court of Common Pleas of Pike County, Pennsylvania, erred in ruling that it lacks jurisdiction under Pennsylvania's long-arm statute over a New Jersey hospital and its doctors, whose only alleged

contact with the Commonwealth of Pennsylvania was their practice of advertising within our borders.

In early July 1991, the plaintiff, Donna Sisson, contacted Newton Memorial Hospital's Physician Referral Service in search of a rheumatologist. The referral led her to the office of Dr. Roland E. Johnson, who diagnosed the plaintiff as having, inter alia, CREST Syndrome, also known as scleroderma.

Dr. Johnson commenced treatment, and in October 1991, also diagnosed the plaintiff as having a diseased heart, and estimated that she had only three to six months to live. She was thereafter referred to Dr. Ruby G. Bendersky for a cardiac catheterization to confirm the diagnosis. The catheterization was performed on October 29, 1991.

In December 1991, plaintiff underwent a heart biopsy to check the progression of the heart disease. Shortly after the biopsy was performed, Dr. Bendersky informed her that the diagnosis of heart disease was correct.

In February 1992, plaintiff opted for a second medical opinion. On May 5 and May 19, 1992, plaintiff met with Dr. James Seibold. On or about May 23, 1992, Dr. Seibold discovered that the diagnosis made by Doctors Johnson and Bendersky was in error.

Plaintiff brought suit April 29, 1994, alleging medical malpractice, intentional or negligent infliction of emotional distress, and negligence against Doctors Johnson and Bendersky, and negligence against the Newton Memorial Hospital.

On October 13, 1994, defendant Newton Memorial Hospital raised preliminary objections on the basis of personal jurisdiction and failure to conform to rule of

court. On October 18, 1994, defendants Roland E. Johnson and Ruby G. Bendersky filed preliminary objections on the basis of lack of personal jurisdiction and lack of specificity in the complaint. After briefs were filed and argument was held, we dismissed the complaint for lack of personal jurisdiction over all named defendants.

## DISCUSSION

Under Pa.R.C.P. 1028(a)(1), a party may preliminarily object to the plaintiff's complaint based upon a lack of jurisdiction. The test which both state and federal courts use to determine a forum state's personal jurisdiction over a foreign defendant was established by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). That case established the so called *"minimum contacts test."* The foreign defendant must have "minimum contacts" in the foreign state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See *id.* at 90 L.Ed. 102.

The Supreme Court has since refined this test to require that "minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A defendant who has purposefully directed his activities at a forum state and then seeks to defeat the imposition of personal jurisdiction, must present a compelling case that the presence of other considerations would render juris-

diction unreasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); see also *First Fidelity Bank, N.A., New Jersey v. Standard Machine & Equipment Company,* 398 Pa. Super. 607, 615, 581 A.2d 629, 633 (1990).

We found that the plaintiff, Donna Sisson, failed to establish that the defendants, Newton Memorial Hospital, Dr. Roland E. Johnson, and Dr. Ruby G. Bendersky, had the requisite minimum contacts with the Commonwealth of Pennsylvania such that the exercise of in personam jurisdiction over them would be reasonable.

Generally, the courts of this Commonwealth have used the three-part test formulated in *Proctor & Schwartz Inc. v. Cleveland Lumber Co.,* 228 Pa. Super. 12, 20, 323 A.2d 11, 15 (1974), to determine whether a tribunal in this Commonwealth has jurisdiction over an out-of-state defendant: "we can find certain guidelines which aid in the factual analysis necessary to make the determination of whether the requisite 'minimum contacts' are present in a given case. First, defendant must have purposely availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. . . . Secondly, the cause of action must arise from [the] defendant's activities within the forum state. . . . Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable." See *Hlinsky v. Ferrara,* 25 D.&C.3d 410, 415 (1982). (citations omitted)

Pennsylvania courts have found that continuous advertising within Pennsylvania is sufficient to satisfy

the first prong of the *Proctor* test. See *id.;* See also, *Garfield v. Homowack Lodge Inc.,* 249 Pa. Super. 392, 378 A.2d 351 (1977); *Hart v. McCollum,* 249 Pa. Super. 267, 273, 376 A.2d 644, 647-48 (1977). The second prong of the test may be met where the plaintiff alleges that he or she saw or heard the advertisements of the defendant, and sought the defendant's services as a result of the advertisement. *Hlinsky, supra* at 416. Finally, the third prong of the test may be met by a showing of an intensive level of advertising within Pennsylvania. *Id.*

If the plaintiff fails to satisfy all the prongs of the *Proctor* test, the court inquiry is not ended. Jurisdiction may be found even where, as here, the plaintiff fails to satisfy the second prong. The cause of action may arise from the defendant's activities within the forum state. In such a case, the defendant may be subject to suit in Pennsylvania if the defendant's activities have been "continuous and substantial." *Id.* citing *Goff v. Armbrecht Motor Truck Sales Inc.,* 284 Pa. Super. 544, 549, 426 A.2d 628, 630 (1980); *Union National Bank of Pittsburgh v. L.D. Pankey Institute,* 284 Pa. Super. 537, 542, 426 A.2d 624, 627 (1980).

In *Hlinsky, supra,* Pennsylvania plaintiffs sued an out-of-state coin dealer for conversion of their gold watch. The plaintiffs delivered the watch to the coin dealer for an appraisal, who in turn allegedly sold it to another entity. Even though the plaintiff failed to satisfy the second prong of the *Proctor* test, the court found the defendant's advertising to be so continuous and substantial as to make the Pennsylvania court's exercise of jurisdiction over the defendant reasonable and foreseeable. *Id.* at 417. The court noted that even

though the defendant's in-state activities were separate and distinct from the plaintiff's cause of action in that the plaintiff did not seek the defendant's services in response to any advertisements, a suit such as the plaintiff's would be foreseeable from the defendant's activities. *Id.*

In cases where Pennsylvania plaintiffs sued out-of-state physicians or hospitals, the courts have noted that whether the defendant has advertised in the Commonwealth is a factor to be considered in deciding the personal jurisdiction issue. In *Danhart v. Whitt,* 20 D.&C.3d 115, 119 (1981), the court held that where the only contact a hospital had with Pennsylvania was that a percentage of its patients are from Pennsylvania and that malpractice resulted in harm to a resident of the Commonwealth, the "minimum contacts" test is not met and therefore personal jurisdiction may not be asserted over the hospital.

The *Danhart* court noted that it could not find that the hospital was engaged in "continuous and substantial" business activities "[i]n the absence of either a sustained promotional campaign or the aggressive seeking of patients." *Id.* citing *Lebkuecher v. Loquasto,* 255 Pa. Super. 608, 389 A.2d 143 (1978). (other citation omitted) In *Lebkuecher,* the court denied personal jurisdiction over a New Jersey physician but noted that its decision may have been different "if [the physician] were aggressively seeking Pennsylvania residents as patients [citing *Garfield, supra],* or if plaintiff had sought [the physician's] services in response to his 'advertising.' [citing *Hart, supra]. " Lebkuecher, supra* at 612, 389 A.2d at 145. See also, *Union National Bank of Pittsburgh v. L.D. Pankey, supra* at 543, 426 A.2d

at 627 (court denied jurisdiction over out-of-state dental institute noting that the institute "engaged in no advertising or solicitation of any sort in Pennsylvania"); *Walters v. St. Elizabeth Hospital Medical Center,* 543 F. Supp. 559, 560 (W.D. Pa. 1982) (applying Pennsylvania law, the court denied jurisdiction over an Ohio hospital noting that the hospital "did not and does not advertise its services in Pennsylvania"); *Lorenz v. Cleveland Clinic Foundation,* 657 F. Supp. 613 (W.D. Pa. 1986) (applying Pennsylvania law, the court noted that the Cleveland Clinic's publication of a medical advice column ostensibly for a national publication, which also appears in Pennsylvania newspapers, was not sufficient to subject the clinic to suit in Pennsylvania).

Under the above standards, we did not believe that we had in personam jurisdiction over the defendants in this matter.

As regards the Newton Memorial Hospital, pleadings and an affidavit show that Newton Memorial Hospital maintains its offices and has its principal place of business at 175 High Street, Newton, New Jersey. They have no place of business in Pennsylvania, nor do they conduct business herein. They are not incorporated in Pennsylvania, nor qualified as a foreign corporation under Pennsylvania law. No patients are treated within this Commonwealth, nor do they have a referral service situate within our borders.

Furthermore, the plaintiff's pleadings allege only that "defendants were aware of and acknowledged the plaintiff's Pike County, Pennsylvania, address." (Plaintiff's complaint, paragraph 5.) Nowhere in her complaint, nor in her answer or argument, does the plaintiff cite

a single concrete instance of contact with our forum, by the defendant, except for the referral, which the plaintiff herself sought.

Furthermore, the plaintiff did not allege that defendants had continuous advertising within Pennsylvania, nor that she saw or heard the advertisements of the defendant, and sought the defendant's services as a result of the advertisement, nor did she plead an intensive level of advertising within Pennsylvania by the defendants.

Still more, the plaintiff failed to plead that the defendants had any activities within the forum state. In such an absence, we believe the defendant should not be subject to suit in Pennsylvania.

As to the defendant doctors, Pennsylvania law is clear that "to establish jurisdiction over an individual on the basis of 'doing business' requires a showing not only that the individual did business in Pennsylvania, but that the business was done by him for himself and not for or on behalf of his corporation or employer." *DiBonaventure v. Home Lines Inc.,* 536 F. Supp. 100, 103 (E.D. Pa. 1982). (citations omitted) In *DiBonaventure,* the court held that jurisdiction did not exist over a cruise ship doctor on the basis of either "doing business" or "minimum contacts." *Id.* Application of that rule to our case would mean that we have no jurisdiction over the individual doctors unless they advertised on their own behalf.

Once again, plaintiff failed utterly to make such a showing in her complaint, and we accordingly granted the defendants' preliminary objections and dismissed the case against them.

Finally, plaintiff has also taken exception to our dismissal of the action before a full hearing on the preliminary objections was held. Our decision was based on representations made by the plaintiff in her complaint, and after argument, but before a full hearing. We do not believe that this court is required to undertake exercises in futility. The complaint was facially insufficient to demonstrate that jurisdiction lie in Pennsylvania; indeed, so much so that it clearly demonstrated that New Jersey was the proper forum state.

For the foregoing reasons, we stand by our decision of December 1, 1994, ordering dismissal without prejudice of the above-captioned action. We note that we did so expeditiously so as to allow plaintiff to reassert her claims in a timely fashion under the statute of limitations in a court of New Jersey competent to hear such claims.